# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **ALFRED ROSSMAN,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:24-CV-00203-RP** |
| | § | |
| **APPLIED MATERIALS, INC.,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Before the Court are Applied Materials' Motion to Compel Arbitration and Stay Proceedings, filed June 21, 2024 (Dkt. 8), and the associated response and reply briefs. By Text Order issued August 12, 2024, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

Plaintiff Alfred Rossman began working for Defendant Applied Materials, Inc. as a manufacturing engineer in August 2017. Dkt. 8-1 at 10. Rossman, who is 67 years old, alleges that beginning in November 2021, his new manager, Malcolm Wallace, created "a hostile workplace" and "discriminated against" him "compared to others under his command (all younger)." Complaint, Dkt. 1 ¶¶ 9-16. Rossman alleges that Wallace created a hostile work environment by making unprofessional accusations against him and condescending remarks, such as that he was "being paid too much"; "trash" talking Rossman at social events outside the company to which he

1

was not invited; disclosing confidential "manager only information" about Rossman to his co-workers; conspiring with co-workers to give him more difficult assignments; and telling Rossman's co-workers that he did not deserve "a 5-Year Anniversary Lunch." *Id.* ¶ 11.

Rossman sued Applied Materials, asserting claims for age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. 621 ("ADEA"), and Chapter 21 of the Texas Labor Code. He also asserts an intentional infliction of emotional distress claim. Rossman seeks exemplary and punitive damages and attorneys' fees and costs.

Applied Materials seeks to compel Rossman to arbitrate based on an arbitration provision in his employment agreement. Rossman argues that the arbitration provision is unenforceable.

## II.    Legal Standards

The Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), was enacted in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA establishes a "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). To that end, courts must "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted).

The FAA "compels judicial enforcement of a wide range of written arbitration agreements," including those contained in employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Section 2 provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

To determine whether a party should be compelled to arbitration, a court first applies state law to determine whether the parties formed "*any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Second, the court interprets the contract "to determine whether *this* claim is covered by the arbitration agreement." *Id.* Ordinarily both steps are questions for the court, unless the agreement contains a delegation clause requiring the arbitrator to decide "gateway arbitrability issues." *Id.* at 202.

Although there is a strong federal policy favoring arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate and that the claims fall within the agreement. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

### III.    Analysis

Applied Materials argues that Rossman must be compelled to arbitration based on the arbitration provision in his Employment Agreement, Dkt. 8-1 ¶ 8 ("Arbitration Provision"). Although Rossman acknowledges that he read and signed the Employment Agreement, he argues that the Arbitration Provision is unenforceable because (1) "[t]he Contract was never signed as accepted by the Defendant"; (2) it is unconscionable; (3) it is illusory; (4) it unfairly limits

discovery; (5) it is overly broad; and (6) recent amendments to the FAA bar its enforcement. Dkt. 14. at 2-3.

### A. There Is an Agreement to Arbitrate

First, the Court looks to state contract law to determine whether the parties entered into an arbitration agreement. *Kubala*, 830 F.3d at 202. Texas law applies here. *See Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (applying Texas law to determine whether arbitration agreement existed because it was the law of the forum state). Arbitration agreements between employers and their employees are "broadly enforceable" in Texas. *Id.* Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding. *Id.* at 689.

On August 6, 2017, Rossman and Applied Materials, through its human resources representative, executed his Employment Agreement, which outlines the general terms of his at-will employment. The agreement states that it was effective on August 6, 2017 "by and between the above-named employee [Rossman] . . . and Applied Materials, Inc." Dkt. 8-1 at 2. The agreement further states: "In consideration of my Employment and the compensation paid to me for my services during the term of my Employment with Applied or any of its Affiliates, I agree with Applied as follows:" *Id.* Relevant here, the agreement contains the following arbitration provision:

> **8.  ARBITRATION**
>
> A.  In consideration of my Employment, to the fullest extent allowed by law and except as set forth below, **any controversy or claim (whether or not arising out of or relating to my Employment or termination of my Employment)**, whether asserted by Applied and/or any other Affiliate of Applied against me or by me (and no other party) against Applied and/or any other Affiliate of Applied or any of their respective agents or employees . . . **will be finally resolved by binding**

> **arbitration**. The arbitration will be conducted by a single, neutral arbitrator and administered by JAMS, Inc. ("JAMS"), under its Employment Arbitration Rules & Procedures (available at http://www.jamsadr.com, and no other rules, if JAMS has an office within 100 miles of where I am employed or most recently was employed with Applied; or, if JAMS does not have an office within that 100-mile area, by the American Arbitration Association ("AAA") under its Employment Arbitration Rules & Mediation Procedures (available at http://www.adr.org, and no other rules**. . . . Claims subject to arbitration will include, but are not limited to, any claims under (as amended) Title VII of the Civil Rights Act of 1964,** the Civil Rights Act of 1991, **the Age Discrimination in Employment Act**, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, the Employee Retirement Income Security Act of 1974, **and any other federal, state or local statute, regulation or common law doctrine, including contract and tort.**

> B. . . . Except as provided below, both Applied and I are waiving our rights to proceed in a court of law, including a trial by jury, in exchange for arbitration.

*Id.* ¶ 8 (emphasis added).

"It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." *Am. Heritage Life Ins. Lang*, 321 F.3d 533, 538 (5th Cir. 2003); *see also CBE Grp. Inc. v. Lexington Law Firm*, 993 F.3d 346, 351 (5th Cir. 2021) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he reads it or believed it had different terms.") (quoting *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005)); *St. Petersburg Bank & Tr. Co. v. Boutin*, 445 F.2d 1028, 1032 (5th Cir. 1971) ("One who reads a written document, or signs it (even without reading it) is bound by its terms.").

Rossman acknowledges that he read and signed the Employment Agreement. Dkt. 14 at 2. He also initialed each page, including those containing the Arbitration Provision. Dkt. 8-1 at 6-7. Applied Materials' Human Resources Representative Monika Sweir also signed the agreement on

behalf of Applied Materials. *Id.* at 10.[1] By signing and agreeing to the Employment Agreement containing the Arbitration Provision, Rossman and Applied Materials agreed to the terms of the Arbitration Provision and agreed to arbitrate "any controversy or claim" between them.[2]

**B.  The Claims Are Covered by the Arbitration Provision**

The Court next considers whether Rossman's claims are covered by the arbitration agreement. As stated, Rossman asserts age discrimination and retaliation claims under the ADEA and a Texas common-law tort claim of intentional infliction of emotional distress.

The Arbitration Provision applies to "any controversy or claim (whether or not arising out of or relating to my Employment or termination of my Employment)." Dkt. 8-1 ¶ 8(A). It also states that "[c]laims subject to arbitration" include, but are not limited to, any claims under "the Age Discrimination in Employment Act" and "any other federal, state, or local . . . common law doctrine, including contract or tort." *Id.* The Court finds that the claims asserted in this suit are covered by the Arbitration Provision. *See Gilmer*, 500 U.S. at 23 (holding that age discrimination claims under the ADEA were subject to compulsory arbitration pursuant to the parties' arbitration agreement); *Ayazi v. Pro. Serv. Indus. Inc.*, No. 4:18-CV-02570, 2019 WL 13254592, at *4

---

[1] Although Sweir signed the agreement, Rossman incorrectly contends that "[t]he Contract was never signed as accepted by the Defendant." Dkt. 14.

[2] *See Bowles v. OneMain Fin. Grp., LLC*, 954 F.3d 722, 726 (5th Cir. 2020) (finding that employer and employee entered into a valid agreement to arbitrate employment-related disputes where parties signed agreement); *Lopez de Leon v. Sanderson Farms Inc.*, 632 F. Supp. 3d 726, 733 (S.D. Tex. 2022) (finding that the parties entered into an agreement to arbitrate where both parties signed the agreement); *Cyphers v. Camino Real Cmty. Servs.*, No. SA-22-CV-00357-JKP, 2022 WL 4280906, at *2 (W.D. Tex. Aug. 24, 2022) (finding that employee executed arbitration agreement when she signed her employment contract); *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 390 (Tex. App.—El Paso 2019, no pet.) ("[T]he uncontested existence of the non-movant's signature on an arbitration agreement meets the evidentiary standard necessary to prove the prima facie existence of an arbitration agreement."); *Ridge Nat. Res., LLC v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet.) ("The fact that a party has signed a contract creates a strong presumption that the party has assented to the terms of the contract.").

(S.D. Tex. Aug. 5, 2019) (finding that age discrimination claim fell within scope of arbitration agreement that required arbitration of "any legal or equitable claim").

## C. The Arbitration Provision Is Enforceable

Because the parties agreed to arbitrate and the claims asserted fall under the agreement, the Court "must consider whether any federal statute or policy renders the claims nonarbitrable." *Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 302 (5th Cir. 2021); *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements."). Rossman argues that the Arbitration Provision in unenforceable because (1) it is unconscionable; (2) it is illusory; (3) it unfairly limits discovery; (4) it is overly broad; and (5) recent amendments to the FAA bar its enforcement.

### 1. Unconscionability

Under Texas law, an unconscionable contract is unenforceable. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). "[T]he theory behind unconscionability in contract law is that courts should not enforce a transaction so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract." *Houston AN USA, LLC v. Shattenkirk*, 669 S.W.3d 392, 395 (Tex. 2023) (quoting *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010)).

The Court finds that the Arbitration Provision is not unconscionable *per se*. "Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law; there is nothing *per se* unconscionable about an agreement to arbitrate employment disputes and, in fact, Texas law has historically favored agreements to resolve such disputes by arbitration." *Id.*; *see also Circuit City*, 532 U.S. at 119 (holding that employment contracts containing arbitration

provisions are not exempt under the FAA).[3] As the Supreme Court explained in *Gilmer*, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 500 U.S. at 26 (citation omitted).

Rossman argues that the Arbitration Provision is unconscionable and illusory because it was "extremely one-sided," he did not have a "meaningful opportunity to negotiate the agreement," and he "was required to agree to the arbitration clause, or his offer for employment would be withdrawn." Dkt. 14 at 3. But "Texas courts have specifically held that an arbitration agreement presented as a condition of an employment offer on a 'take it or leave it' basis is not unconscionable." *Escalera v. JD Bryder Dfw-Texas, Inc.*, No. 3:14-CV-817-N, 2014 WL 12588317, at *3 (N.D. Tex. June 16, 2014) (citing *Carter*, 362 F.3d at 301).

Nor does unequal bargaining power between an employee and employer "establish grounds for defeating an agreement to arbitrate under the FAA." *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90-91 (Tex. 1996); *Stephenson v. Rackspace Tech., Inc.*, No. SA-22-CV-01296-XR, 2023 WL 3551016, at *6 (W.D. Tex. May 18, 2023) ("That one party may have been in a superior bargaining position does not render an agreement procedurally unconscionable."). Nothing suggests that Rossman, an experienced manufacturing engineer, was coerced or defrauded into agreeing to the Arbitration Provision. *See Gilmer*, 500 U.S. at 33 ("There is no indication in this case, however, that Gilmer, an experienced businessman, was coerced or defrauded into agreeing to the arbitration clause in his registration application."). Rossman does not show that the Arbitration Provision is unconscionable.

---

[3] The limited exception is employment contracts "of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

**2. The Arbitration Provision Is Not Illusory**

Promises are illusory and unenforceable if they lack bargained-for consideration because they fail to bind the promisor. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). "An arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate. And an arbitration provision that is part of a larger underlying contract may be supported by the consideration supporting the underlying contract." *Id.* But an arbitration agreement is not illusory if it is "one-sided" or "binds parties to arbitrate only certain disagreements." *Id.*

The Arbitration Provision binds both parties and allows neither to unilaterally escape the obligation to arbitrate. It is not illusory. *See id.* at 505-06 (finding that arbitration provision was not illusory where it bound both parties and allowed neither party to unilaterally escape or modify the obligation to arbitrate covered claims).

**3. Discovery Limits**

Next, Rossman argues that the Arbitration Provision is unenforceable because it calls for arbitration to be administered under the JAMS' Employment Rules & Procedures ("JAMS Rules"), which he contends unfairly limit his ability to take depositions and seek discovery.

JAMS Rule 17(b) states:

> Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness.

JAMS Employment Arbitration Rules, Rule 17(b).[4] The Arbitration Provision also states:

---

[4] Available at https://www.jamsadr.com/rules-employment-arbitration/english.

> In any arbitration commenced pursuant to this agreement to arbitrate, depositions may be taken and discovery obtained to the reasonable amount necessary for both parties to be able to present their claims and defenses, taking into account the parties' mutual desire to have a speedy, cost-effective dispute-resolution mechanism. The arbitrator will determine and apply reasonable discovery limits in the arbitrator's discretion.

Dkt. 8-1 ¶ 8(E).

Although arbitration discovery procedures "might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer*, 500 U.S. at 31. Limited discovery "is one of arbitration's most distinctive features," and the Texas Supreme Court has held that "arbitration's limits on discovery for *both* parties does not make it unconscionable." *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 695 (Tex. 2008) (stating that the "argument that 'streamlined' discovery makes arbitration unconscionable would nullify almost all arbitration agreements").

Given that the limits on discovery under the JAMS Rules applies to both Rossman and Applied Materials, Rossman does not show that the Arbitration Provision is unenforceable. *See Cleveland v. Salesforce, Inc.*, No. 1:23-CV-762-RP, 2024 WL 1023898, at *4 (W.D. Tex. Feb. 20, 2024) (holding that arbitration provision's limitation on discovery for both parties "does not make the Arbitration Agreement unconscionable"), *R. & R. adopted*, 2024 WL 1023061 (W.D. Tex. Mar. 7, 2024); *Garcia v. Univ. Behav. Health of El Paso, LLC*, No. EP-18-CV-254-KC, 2019 WL 13472245, at *3 (W.D. Tex. Mar. 13, 2019) (stating that arbitration provision "that limits the number of depositions available to each party equally and empowers the arbitrator to increase the limits as necessary is not unconscionable").

**4. Overly Broad Terms**

Rossman also argues that the Arbitration Provision is not enforceable because it is overly broad and mandates arbitration of "any controversy or claim." Dkt. 14 at 4. But broad arbitration clauses are enforceable, and Rossman offers no reason the clause should not be enforced. *See Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998) (enforcing "extremely broad arbitration provision" that applied to "any" dispute "related to" the joint operating agreement); *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 116 (Tex. 2018) (enforcing broad arbitration clause that applied "to all disputes, even those relating only indirectly to the loan agreements").

**5. EFAA**

Finally, Rossman argues that the Arbitration Provision is unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. § 402 ("EFAA"). The EFAA provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The EFAA defines a "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). When a party alleges "conduct constituting a sexual harassment dispute," the EFAA makes predispute arbitration agreements unenforceable "with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . the sexual harassment dispute." *Id.* § 402(a). Whether the EFAA applies to a dispute is a question for the courts. *Id.* § 402(b).

The EFAA is inapplicable because Rossman asserts no allegations of sexual assault or sexual harassment in his Complaint, Dkt. 1, or in his EEOC Charge of Discrimination, Dkt. 1-3. *See McNeal v. Exeter Fin. LLC*, No. 2:24-CV-165-MHT-JTA, 2024 WL 4361624, at *3 (M.D. Ala. Aug. 19, 2024) (holding that "§ 402 is wholly inapposite to this case, which arises out of a contract dispute over an automobile loan, not a sexual assault or sexual harassment incident"), *R. & R. adopted*, 2024 WL 4365209 (M.D. Ala. Sept. 30, 2024). Rossman asserted only age discrimination and hostile work environment based on his age in his EEOC Charge and Complaint.

In response to the motion to compel, Rossman alleges for the first time that "Malcom Wallace's toxic management practices included sexual harassment in the Defendant's hostile work environment." Dkt. 14 at 5. While Rossman acknowledges that "Wallace never made any sexual advances to Plaintiff," he states that he "had to endure his many sexually demeaning statements." *Id.* at 6. But, as stated above, Rossman never alleged sexual harassment or a sexually hostile work environment in his EEOC Charge of Discrimination.

"To satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge. That requirement relates to a key purpose of an employment-discrimination charge, which is to give the employer notice of the existence and general substance of the discrimination allegations." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). Because Rossman never mentioned sexual harassment in his EEOC Charge of Discrimination, he has not exhausted his administrative remedies for such a claim. *See id.* at 339 (finding that plaintiff failed to exhaust sex discrimination and retaliation claims where EEOC charge only alleged race discrimination); *Castro v. Texas Dep't of Crim. Just.*, 541 F. App'x 374, 379 (5th Cir. 2013) (holding that race or sex discrimination claims did not grow out of EEOC charge alleging only age discrimination); *Lawson v. Parker Hannifin Corp.*, No. 4:13-CV-923-O, 2014 WL 5039464, at *5 (N.D. Tex. Oct. 9, 2014) (finding

that sexual harassment claim did not arise out of retaliation claim asserted in EEOC charge), *aff'd*, 614 F. App'x 725 (5th Cir. 2015). Even if Rossman sought to amend his Complaint to include a sexual harassment claim, any amendment would be futile because he has not exhausted his administrative remedies. *See Maldonado v. City of Midland*, No. 23-CV-00037-DC-RCG, 2023 WL 6978077, at *5 (W.D. Tex. Oct. 5, 2023) (finding that amending complaint would be futile due to exhaustion where sexual harassment claim did not grow out of sex discrimination claim asserted in EEOC charge*), R. & R. adopted*, 2023 WL 6979608 (W.D. Tex. Oct. 23, 2023).

**D. Conclusion**

The Court finds that the parties entered into a valid and enforceable arbitration agreement that covers the claims asserted in this suit. Because Rossman has not met his burden to show that the arbitration agreement is unenforceable, this Magistrate Judge recommends that the District Court grant Applied Materials' motion to compel arbitration. *See* 9 U.S.C.A. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, "§ 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

> [S]taying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts. The FAA provides mechanisms for courts with proper jurisdiction to assist parties in arbitration by, for example, appointing an arbitrator; enforcing subpoenas issued by arbitrators to compel testimony or produce evidence; and facilitating recovery on an arbitral award. Keeping the suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the FAA's procedural protections.

*Id.* This Magistrate Judge also recommends that the District Court stay this case during arbitration.

13

## IV.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Applied Materials' Motion to Compel Arbitration and Stay Proceedings (Dkt. 8) during arbitration.

**IT IS FURTHER ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and return it to the docket of the Honorable Robert Pitman.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 8, 2024.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE